Good afternoon and may it please the court. My name is Lincoln Bandlow. I represent the Appellant Strike 3 Holdings LLC in this matter. I would like to reserve three minutes of my time and I'll pay close attention to the clock. All right, thank you, counsel. Okay, thank you. This bid-torn copyright infringement case is one that could have been and should have been ended three years ago, long before the defendant even had an obligation to be a part of it. Typically, around the country, judges have entered practical and reasonable orders, as this court talked about in Cobbler, orders like Judge England. I know Judge England has handled a number of these cases and has in place a very strong order that puts in a couple of protections early on in this case. It gives a protective order to the defendant, so there's no concern their name will ever be revealed, which we would never do anyway, but it's good to have that. But in particular, it says, we get the name and address of a subscriber early. These have to be Doe actions because of how the internet works. We get the name and address of the subscriber early so we can conduct a further investigation to make sure, before we serve somebody, that we have the right person to proceed against. Maybe it's not the subscriber, maybe it's somebody else in the household. Cobbler has said, conduct a careful investigation early on to make sure you're going against the right person. We didn't have that in this case. We would have normally had that within a month of filing. Here, we didn't get it for eight months because of some various district court and Doe's defense counsel. But once we did get that information eight months later, we did do what Cobbler says and what we've always done. We did a very careful investigation and we determined that it appeared it was not the subscriber, but his adult 40-year-old son, live-at-home son, who appeared to be infringing 87 of our works on a pretty significant basis. However, because both father and son were noted BitTorrent users and there was some ambiguity as to whether it was the father or the son, and for other prudential reasons that we take into consideration in all these cases, we decided to dismiss and we exercised our absolute discretion, as this court said in the American Soccer case, our absolute discretion under Rule 41a1i to dismiss it without prejudice. There's no answer. Counsel, you did have the discretion to do that, but what was the strategic reason for dismissing without prejudice? Well, there wasn't any strategic reason, Your Honor. The reason we dismissed without prejudice is because it was our absolute right to do it, and under 41a in American Soccer, that ends the dispute between the parties, as the court said. But the second reason we didn't do it... Well, the district court had the absolute discretion to consider that whether or not the dismissal was with or without discretion as well, didn't it? So you exercised your discretion and the district court exercised its discretion. So what's the difference? No, actually, under American Soccer and other Ninth Circuit cases, if there's no answer or summary judgment motion, then we have the absolute discretion to dismiss it without prejudice, and the court can't do anything to change that. The court has no discretion to come in and say, maybe it should be with prejudice or anything. The court plays no role. But the district court said that because it was dismissed without litigation, and didn't the district court have the discretion to make that determination? Well, they would only have the discretion to make the determination that that supposed ongoing threat could possibly be the basis for a counterclaim, which it can't here. So we're kind of putting the cart before the horse. But I don't think the court had any discretion to change that initial dismissal in any way, shape, or form under the case law. But the court didn't change the dismissal, it just took it into consideration in determining whether or not there was a likelihood or potential for additional litigation. It took that into consideration in determining whether to allow the counterclaim to proceed. But at the moment in August of 2018, when we filed that dismissal, there was no discretion for the court to do anything as to it. It had to grant it. Correct. But then the issue became whether or not the counterclaim could proceed on the premise that there was still threatened or potential litigation. Yes, and as we brief, that supposed threat or apprehension of that isn't sufficient to continue with a counterclaim for I didn't do it, which is his counterclaim here. But if your question was why didn't we dismiss with prejudice, A, we didn't have to, but B, there was a reason we didn't. When you dismiss a copyright claim... That's what I asked you a couple of minutes ago. Yeah, that's what I'm trying to get to. So when you dismiss with prejudice, it really has two effects. First effect is to say you can't bring these claims again. And the second effect is to say, and the defendants, the prevailing party who could pursue fees. We always said from the get-go, from day one, we said we would be willing to change that to a dismissal with prejudice because of that first part, for you to have some peace of mind, we won't sue again. We're fine with that first part because we're not coming back. We're not going to sue again. But that second part where you get to say, I won, I can get my fees, we didn't then, and we don't now agree with that proposition. We feel we won this case. We stopped infringement from happening. We clearly nailed the right house. It was the sun, based on all the evidence we gathered, even prior to dismissal, we gathered significant evidence it was the sun. And we feel we prevailed here and got one of our purposes, which is to get the infringement to stop. We certainly didn't want to give a stamp of approval to a dismissal that would allow them to seek fees that they spent eight months generating doing stuff that did not need to happen at all if they would have just in February of 2018 given us the name and address so we could do that further investigation. So we didn't want to deem ourselves not the prevailing party. We very much felt we were. You have absolute discretion to choose whether to dismiss with or without prejudice, but you don't have absolute discretion to choose the consequences of that. And once you did it without prejudice, then there was the possibility of you coming back, there had been a threat in an email, and they had a counterclaim pending. Well, they had two counterclaims pending, one of which was an existing legitimate counterclaim in the sense that it was a separate claim in which they said you abused process. So you took various steps and did various things that were abuse of process. We ultimately got that thrown out. But the other counterclaim that just is a simple denial of liability counterclaim, we didn't do it denial. That's not a valid counterclaim. And so we did exercise, we did agree that it was appropriate under our absolute right to dismiss without prejudice because we felt that ends the case and we've prevailed essentially at that point. There is no email threatening further action. I know that the defendants like to contend that. We never, we made it perfectly clear on multiple occasions that we weren't coming back. And in fact, defense counsel knows we weren't coming back. And this is in the record at docket entry number 180. What happened is during the time that we were briefing the summary judgment in this case, I had a separate case against Mr. Edmondson, defense lawyer. It was a bit torn strike three case in the Northern District. We investigated, decided to dismiss without prejudice. He brought a motion for attorney's fees, even though it was without prejudice. So I think it was, it was in violation of cat can be loose, but he brought a motion for attorney's fees. And he said, I'm really, my client's really the prevailing party because even though it's without prejudice, Mr. Edmondson said, quote, there's 0% chance we'll ever refile again. He said that for a reason because he knows once we get the information and we're able to investigate, if we don't, if we don't proceed with the lawsuit under cobbler, it really means we just didn't find what we think is enough to proceed. So nothing's going to change from that. He knew as a practical fact effect, we weren't coming back and he was just trying to prolong the litigation with this inappropriate counterclaim simply because he knew under Katkin, he couldn't be deemed the prevailing party and he really wanted his attorney's fees. So we had to drag us through 18 months of litigation on this. I didn't do it counterclaim the reverse of our claim that you did do it simply because he hopes he can be deemed prevailing party and get his fees. Uh, and that's just simply a not appropriate counterclaim. It, it, it lacks standing under article three unquestionably. And it's, it's all, it's hard to argue that this has any article three standing. It doesn't meet any of the requirements of article three are pretty clear. Uh, if you look at all of the cases, um, they, they all have the same thing. Y'all have this same first requirement. That's not met here at all. It's something I like to summarize with courts just don't decide fights. They decide rights. Marbury versus Madison said that is the important function. That's the sole function of courts to decide rights. The first thing you always have to show is you have a right at stake, some kind of right to do or not do something that you wish to do. That's part number one. Part number two is you have to show you're either doing that thing or you have concrete plans to do that thing. And part number three is you have to show somebody out there is threatening you. If you do that thing, somebody will sue you or you will be criminally prosecuted. If you do that thing, there's a reasonable apprehension or, or, you know, pretty imminent threat. This bad thing will happen to me. If I do the thing, those are the three steps. We don't even get past step one on this claim. He's not saying I have a right to do something. Please declare my right to do something. I want to keep infringing. I want to sell strike three works. I want to sell works that allegedly infringe. He's not saying any of that. He's not saying that there's a likelihood that he will be threatened with infringement, but that only gets infringing. That only gets us to that third part of the test, which is normally the threat of a lawsuit is the court saying, is this an academic dispute? In other words, if I say I have a right to go walk in the park, one of the things we'd ask is, is anybody threatening you? If you do that, is there any reason you have to worry about whether you can't do that? So counsel, um, uh, after I read, after I read the various declarations from the experts, um, I reached the tentative conclusion, uh, that, uh, that they hadn't downloaded any movies. Are you claiming that they did download movies? A hundred percent. That is a hundred percent clear that they downloaded movies. Then it seems like there's a pretty good chance. You're going to sue them again. No, actually, actually, as I said, because of the cobbler ruling that says have some very good evidence that you've got the right person. And because it could have been father or son, and because of other reasons, we have a policy in strike three, which is if it appears that pursuing someone through litigation will cause them substantial financial economic hardship, we just don't do it. We're not in it to do that. And so we've made that determination with this case pretty, pretty early too. And counsel, why didn't you dismiss this without, with, with prejudice? Because, because again, it's a good question, but because again, that gives the stamp of approval on day one, they were right and we were wrong and they should be able to at least, I mean, your whole, your whole without a prejudice theory just leaves everything in limbo. It's not clear that you won't sue them again. You, you, because you, you have reserved your right to do so by exercising discretion in that way. Uh, and now you're telling us there's a hundred percent chance that they downloaded these films, even though I thought the experts concluded that, that they didn't, that you didn't have the, you didn't have the evidence for that. No. Well, so there's, there's, we had, we had conclusive evidence that there had been transfers from that IP address of our films. There's no question about that. Uh, the district court's reading of the evidence was just wrong. And we laid that out pretty clearly in our reply brief and judge Bybee, you've had cases involving, uh, uh, enforcement of a pornography cases where you've seen how this technology works. It's ours works exactly the same way we are. Our experts are said to be better than in those cases. So there's no question we found that infringement was happening. That doesn't mean we'd still pursue it. We find cases all the time where infringement is happening, but for prudential reasons or for reasons that we feel we can't meet a slam dunk sort of cobbler standard, we just don't pursue them. But at our, at that point in the case, we were absolutely entitled to dismiss it without prejudice and to assume the action was over. It was only their efforts to drag it out and drag it out. Now, in terms of this, I've got a fear it might come back. This court has held definitively that that is not enough for standing in the Foster decision. Foster beat Carson in a very similar sort of circumstance. The ninth circuit case. So did that case involve a counter claim that was already pending? Uh, yeah, yes. That's no, it involves a claim that was pending. It involves a claim that was pending that then lost its standing. Okay. I'm not talking about a 41 a dismissal. I'm talking about a case in which a federal fund, a federal funding for indigent prisoners for criminal defendants was cut. And so those criminal defendants sued and said, I, that violates my civil rights to cut my cut fees to my lawyer. But then that program got changed and the money started flowing to the standing issue came up and the court, uh, the defense or the plaintiff said, well, but they might put those cuts in place again. I'm afraid there's a risk. There's a possibility they'll put those cuts in again. And this court said the, the, the mere possibility that that could come back is just simply not enough. That's this case is different because it's not a mere possibility. There was a, a threatening letter sent. There was not a threatening letter sent. There's nothing in There is absolutely nothing in the evidence that shows that after we dismissed, we made any remote kind of threat that we were coming back. None whatsoever. They liked the record was that there was an indication that the charges could be brought later. No, there was none. They like to argue that we said that, and there's no proof that we did. What happened was is we had to defend their counterclaims. So we had to look into issues of did the son infringe did the, did the dad We didn't want to do it. We wanted to be over with, but because we had to defend ourselves now, we had to look into those things. And I said to the other side, if there's evidence, the son did it, then theoretically, the dad looks like a contributory infringer based on our facts. And that helps us defend his counterclaim of, I didn't do it. It was us gathering information to say, no, maybe you did do it. And therefore your claim should be extinguished as to us. That sounds a lot like saying we could still go forward with this if we wanted to. But it, but it's not, it's in fact, saying quite the opposite. In fact, there's a declaration in this case where our, one of our chief counsel said we would never sue them again. We told them, we told them unequivocally, we're not ever bringing this case back. The only thing that happened over 18 months was them insisting on getting attorney's fees and more attorney's fees and more attorney's fees. And we just said, look, we're never coming back. We'll convert it to win prejudice. The way you say that with conviction is to dismiss with prejudice. You've exceeded your time counsel. We'll give you a minute for rebuttal. Okay. Thank you. Ms. McEntee. Good afternoon and may it please the court. Adrienne McEntee on behalf of John Doe. Article three requires a case for controversy. There's really no question that there was a John Doe allegedly for stealing their pornography. And as part of that same controversy, John Doe asserted a counterclaim for a declaration of non-infringement. That controversy didn't just immediately evaporate when strike three decided to dismiss its claim without prejudice. John Doe was still entitled to declaratory relief. Strike three was in the driver's seat here. And as the court has already noted, strike three could have mooted this case by dismissing with prejudice. We agree that would have mooted the declaration for non-infringement claim. Counsel, let's suppose that they had dismissed their claim with prejudice. Could you have gone into district court under a different docket number and filed a declaratory judgment action? I don't believe we could have your honor. You wouldn't have standing to do that? I don't believe we would have because that that's correct. The other way that strike three could have mooted this controversy would be by offering a unconditional covenant not to sue, but they didn't do that either. Yes, your honor. What if your client's name had somehow been leaked, perhaps inadvertently, but it was in now in the public domain. So it was known who your client was that they'd been sued for copyright infringement for downloading pornographic materials, and they felt that there was some kind of collateral consequences. Could you have gone in on a declaratory judgment in that case? It's a great question. I still think the answer is no to that. I think that our client may have had a different claim against strike three based on privacy concerns. But no, I don't believe we would have had the ability to go in and bring a separate cause of action once they had dismissed their claims with prejudice. So is it your view that your declaratory judgment action was a compulsory counterclaim? I believe that it was wrong. It had to be brought into suit or it could not it could not have been wrong at all. Absolutely. Absolutely. I expect that if John Doe had brought a separate action for a declaratory judgment, I would have expected Mr. Bandalow to argue in this action that we should have asserted it as a compulsory counterclaim. Absolutely. Do you agree with opposing counsel that there was no indirect or veiled threat to continue proceedings against your client? Absolutely not. We completely disagree with that, Your Honor. Not only did they leave open the ability to be able to refile these claims, they actually did make these threats. These were not 205 and I quote, if defendant persists in his declaratory judgment claim, plaintiff's motion to compel production of the son's hard drive can't be withdrawn since any evidence of plaintiff's work or bit torrent is relevant to the remaining claim, including the possibility of pursuing defendant for contributory copyright infringement. And a month prior, we had a conversation with Mr. Bandalow where he made that same threat over the telephone. So reasonable apprehension that you're going to be sued is a long, long standing basis for courts to find standing, not only in this circuit, but in every other circuit. And the Supreme Court in Metamune didn't do away with that. All it did was expand what's required for considering a standing analysis. There's no question that John Doe not only was afraid that he was going to be sued again, but actually experienced threats. And I might add that strike three suggests that these weren't actually threats. I mean, I think the language speaks for itself, but even to the degree that we're to believe that strike three didn't actually mean to threaten John Doe. The case law in this circuit, both in Germano Rhodes versus Avon and the Hal Roach decision, both say that when you're looking at what sort of threat was being made, you look at it from the perspective of the person who's threatened. You don't look at it from the perspective of the person who's making the threat. John Doe never asked to be in this situation, but when he was sued for something he hadn't done, 70-year-old police officer, retired, spent part of his career having to deal with sex trade crimes, had zero interest in looking at pornography. When he was sued for something he hadn't do and forced to go hire an attorney, he had every right to assert a counterclaim seeking that the court declare that he had not done what he was accused of doing. The district court got it right. We ask that you affirm. We also ask that you affirm the district court's finding as to attorney's fees. The district court appropriately used its discretion by considering the Fogarty factors here. Did the court consider the Fogarty factors? I had a question about that. The discussion on attorney's fees was fairly brief and so I had a concern as to the extent to which the court actually did consider the Fogarty factors. Yes, your honor. The court considered the Fogarty factors in ER 13 and ER 15. The specific factors that the court found to be relevant here were the factors of whether deterrence or compensation made sense, the goals of the Copyright Act. Fogarty tells us that attorney's fees are equally available based on a court's discretion to a plaintiff or a defendant. Fees are just as available to a defendant who's defending against meritless claims, which is what John Doe did here. I would note also that this court recently in Trisona found that this sort of gamesmanship, which is what we believe happened here by strike three by the losing party, can warrant attorney's fees. Awarding attorney's fees to a prevailing defendant when the plaintiff had minimal evidence at the beginning of the case and dragged out the case longer than it needed to be actually advances the interests of the factors. But I didn't see where the court actually went through those. The Fogarty factors, your honor, include frivolousness, motivation, the need for compensation or deterrence, and the goals of the Copyright Act. And so that's what Fogarty tells us in footnote nine of that decision. And, you know, those were the factors that he talked a lot about copyright trolls, which I'm not sure that that was appropriate for him to consider in terms of the Fogarty factors. And he also erroneously attributed to strike three an admission that Doe never transferred portions of the copyrighted movies over the BitTorrent network. So those things kind of give me a little bit of hesitancy regarding how the district court arrived at attorney's fees. Well, your honor, I disagree that the district court referred to strike three as a troll. In fact, Paul did a copyright troll. What was the point of that discussion if not to infer that it applied to strike three? Your honor, I think it was the point of that was to provide some background. I actually don't believe that the district court thinks that strike three is a troll. And I think if the district court believed that was the case, we would have seen a decision that was more like the one in Glacier, which this court said was absolutely inappropriate. In that case, you had that district court all over the place was maligning that particular plaintiff for things that other plaintiffs had done, for things that other attorneys representing that plaintiff had done. It was really maligning the entire industry, the BitTorrent industry of plaintiffs like strike three, pursuing these sort of cases. And Judge Zille didn't do that. But to answer your question, where did Judge Zille talk about the Fogarty factors? He talked about them in ER 15, where he said compensation is a relevant factor, as is the policy underlying the Copyright Act of encouraging defendants to advance and litigate meritorious copyright defenses. And that was at 520, that's Fogarty at 527. So I do think that the district court properly considered the Fogarty factors and in addition, properly considered what this court required in Glacier and in Cursing, which is that you actually place the most focus, you're supposed to place the most focus in these analyses on the reasonableness or unreasonableness of strike three's arguments. And I disagree, that the district court wrongly asserted that strike three had abandoned any assertion that it had evidence that John Doe copied any of the movies. John Doe did not copy any of the movies. Our expert analyzed his hard drive and there was no evidence of any of strike three's films on there. Zero. The question was, oh, I'm sorry, go ahead. Just quickly, then that suggests that the Sun also didn't didn't download it because it wasn't found on the computer? Uh, well, the evidence about the Sun, Your Honor, we, the truth is, we don't know whether the Sun was responsible for infringement. What came out during the Sun's deposition, which is part of the record in this case, is that yes, he did use BitTorrent to download adult works. He wasn't aware of whether those works were strike three's works. So we don't know whether whether John Doe's Sun was responsible. What we know is that John Doe was not. I see that I'm out of time. Well, let me ask you one final question, Counselor, and the other members of the panel may have questions as well. On ER 15 note six, the judge said strike three has been described as a copyright troll and then talks about the cases that strike three has filed. What was the point of that in terms of the attorney's fees discussion? Um, you know, my understanding, here's the way I read that, Your Honor. I think that Judge Zilley was very concerned about the in the nine cases in the Western District of Washington over a two day period. And those cases were all identical other than the IP address and whatever evidence strike three claimed to have as part of exhibit three, which we now know isn't actually evidence of any copyrightable data. So to the extent that strike three was not able to to establish, as was its burden at summary judgment, that our client had that had had copied any of its works, Judge Zilley had the same concern about the eight other cases that were filed within that same period of time. That's the way I read that footnote. Are there any other questions from the panel? All right, rebuttal. Yes, and quickly, and thank you, Your Honor. First of all, just to correct the record, we offered a covenant not to sue very early on. We said, you want that? We'll give you that. We just did not want them pursuing their attorney's fees because we feel they had not prevailed. So did offer a covenant not to sue. And secondly, and I think it's Judge Bybee recognized, this could not have been a separate lawsuit to say, hey, just declare I didn't do a particular thing because that would not be a right he's claiming. He wouldn't be saying, I had the right to download those movies. And so declare that I had the right to do that. You have to start with a request for the court to declare your rights. Marbury versus Madison, going back that far. That's what courts are for, to declare rights. He was never asking for a declaration of his right. He was saying, please give me peace of mind. You won't come back. If that's enough, then it writes Rule 41A out of existence because that rule says a plaintiff should be able early on in a case before a lot has happened to say, you know what? I've changed my mind. I don't want to do this fight. So I'm dismissing without prejudice. If that works, every single dismissal without prejudice is now invalid because everyone will say, oh, but I have a counterclaim that I'm worried you might come back. And it would write Rule 41A out of existence. And I don't think that that's a possibility. But counsel, you have to admit that the items that opposing counsel read into the record sound a lot like retaining the option of relitigating. That was exactly my next point. Thank you very much. It's just simply misreading what was going on there and what I We are now defendants in a lawsuit in which they're claiming I didn't do something. I didn't do something. I should not be a copyright infringer for any reason, way, shape or form. That's what Doe was saying in his claim. I should never be able to be deemed a copyright infringer. And we said, well, wait a minute. If your son's got all our movies on his computer and you gave him the BitTorrent and you knew this was going on, the record is clear. They've gotten previous DMCA notices, lots of infringement, lots of infringement. And the record is clear. Doe said as soon as he got those, he went to son and said, cut it out. So he knew son was doing this. So what we were saying was son's computer is relevant to our defending ourselves. Contributory infringement would mean you are an infringer. You lose your claim that you're not an infringer. We were never threatening to sue him again. We would have never proceeded in this case under any set of circumstances. We offered a covenant not to sue to confirm that. We offered a dismissal with prejudice to confirm that just needed them to simply agree. You didn't win this one. We did. Don't seek your fees. All right. Counselor, do you want to discuss attorney's fees before you conclude? Yes. Very, very briefly. He didn't mention the Lamberth ruling from the District Court of D.C. for no reason. He mentioned it over and over and over. He called us a troll about a thousand times. That in and of itself violates this court's ruling in Glacier. You're supposed to look at that case, what happened in that case, in that case only. He clearly had it out to get us from the beginning. It started with his order that made us. He made us sue somebody we didn't even know who they were. Counselor, could you confine your remarks to the attorney's fees and the Fogarty factors? So he clearly had a bias against us. He talked about, yes, the Fogarty factors are mentioned literally in passing. He doesn't talk about serving the purposes of the Copyright Act, which is really one of the key factors here. He doesn't really talk about the objective reasonableness of our claim. We submit our claim was extremely objectively reasonable initially when we filed it. We found the right house with somebody in it infringing our works. So a successful, I didn't do it defense, that doesn't promote copyright law in any way. It's not like fair use was furthered. It's not like licensing law was furthered. It's just one guy who says, I didn't do it. That doesn't promote the purposes of copyright law. So none of those his discussion of other supposed cases that had no factual support, we didn't get a chance to brief what he said about us. That can't be the basis under Glacier alone. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bybee, England